UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/9/21

UNITED STATES OF AMERICA,

v.

JONAS ANTONIO BRITO,

          Defendant.

20-CR-200 (KMW)

OPINION AND ORDER

KIMBA M. WOOD, District Judge:

    Defendant Jonas Antonio Brito has moved to dismiss the March 11, 2020, Indictment (the "Motion" or "Mot.") charging him with illegally reentering the United States after he had been convicted of an aggravated felony and deported, in violation of Title 8 United States Code §§ 1326(a) and (b)(2). For the following reasons, his Motion is denied.

    Defendant's arguments are premised on his contention that the Immigration Court lacked jurisdiction over him because the initial Notice to Appear ("NTA") for Defendant's immigration proceeding did not specify the time or date of his immigration hearing. A subsequent notice to Defendant did state the date and time for his immigration proceeding. The Second Circuit rejected an identical lack-of-jurisdiction argument in *Bangas Gomez v. Barr*, 922 F.3d 101, 112 (2d Cir. 2019), holding "We conclude that an NTA that omits information regarding the time and date of the initial removal hearing is nevertheless adequate to vest jurisdiction in the Immigration Court, at least so long as a notice of hearing specifying this information is later sent to the alien."

    Defendant's ability to challenge the validity of his deportation order is limited by § 1326 of Title 8, United States Code, which states that "an alien may challenge the validity of his deportation order if he demonstrates that: (1) he exhausted any administrative remedies available to seek relief against the order; (2) the deportation proceeding that resulted in the

issuance of the order deprived him of the opportunity for judicial review; and (3) the entry of the deportation order was fundamentally unfair. 8 U.S.C. § 1326(d). The defendant must also demonstrate that, "absent the procedural errors, he would not have been removed." *United States v. Fernandez-Antonia*, 278 F.3d 150, 159 (2d Cir. 2002).

Defendant attended his immigration proceeding and admitted to all of the facts that made him deportable. He does not now dispute any of those facts or suggest any reason why he was not deportable, apart from his contention that his deportation order was issued by an Immigration Court that lacked jurisdiction over him.

The Court holds that the Immigration Court that issued Defendant's deportation order had jurisdiction over him because: (1) the NTAs in this case were adequate under clear Second Circuit precedent; and (2) in any event, Defendant cannot demonstrate prejudice, as required to collaterally attack his removal.

## BACKGROUND

Defendant is a native and citizen of the Dominican Republic. He initially came to the United States in 1992. In 1998, he was convicted of criminally possessing a weapon in the third degree in violation of New York Penal Law § 265.02(4).

In 2001, Defendant was indicted in the United States District Court for the Eastern District of New York for conspiracy to possess with intent to distribute heroin and cocaine, in violation of Title 21, United States Code, §§ 841(a)(1) and (b)(1)(A). Defendant cooperated with the Government and pleaded guilty. Defendant was sentenced to 60 months' imprisonment.

In January 2005, while he was serving his sentence, Defendant was interviewed by agents of the United States Immigration and Custom's Enforcement ("ICE"), and was determined to be a deportable noncitizen. On January 18, 2005, ICE entered an immigration detainer for

Defendant. On January 28, 2005, Defendant was charged by ICE in an NTA (the "January NTA") with being removable from the United States because of his drug conviction. Specifically, the January NTA alleged that: (i) Defendant was not a citizen of the United States; (ii) Defendant was a native and citizen of the Dominican Republic; (iii) Defendant entered the United States on or about April 25, 1992 as an immigrant; and (iv) Defendant was convicted in the Eastern District of New York of a controlled substance offense. Defendant was charged with being subject to removal from the United States.

The January NTA specifically ordered Defendant "to appear before an Immigration Judge of the United States Department of Justice" at 970 Broad Street, Room 1135, Newark, New Jersey 07102, and stated that the specific time and date would be scheduled at a later date. The January NTA certificate of service shows that Defendant was served by regular mail. It also informed Defendant that, among other things: (i) he could be represented "by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16" at no cost; (ii) he would have an opportunity at the hearing to admit or deny any or all allegations in the NTA, to present evidence on his own behalf, to examine evidence presented by the Government, and to cross examine witnesses presented by the Government; and (iii) that he would be advised by the Immigration Judge of any relief from removal for which he may appear eligible.

On March 20, 2005, ICE informed Defendant in writing that he would be detained during the immigration proceedings. Defendant signed that form and acknowledged receipt of it. On March 30, 2005, ICE notified the Office of the Immigration Judge of the fact that Defendant had been taken into ICE custody.

3

On April 6, 2005, the Newark Immigration Court issued a notice to Defendant that his removal case had been set for April 11, 2005, at 1:30 p.m., at 970 Broad Street, Room 1135 Newark, New Jersey 07102 (the "April NTA"). The April NTA, issued to Defendant while he was in custody, provided Defendant with the information that was absent from the January NTA - specifically, the date and time of the immigration proceeding. The April NTA also stated, as had the January NTA, that Defendant had the right to be represented in the proceeding by an individual who is authorize to represent people before the Immigration Court; it also provided Defendant with the address where he could file any motions including motions for continuances, with the Immigration Court. The Immigration Court staff certified that the April NTA was served on Defendant by mail.

On April 11, 2005 (the date set forth in the April NTA), an Immigration Judge conducted Defendant's immigration hearing. Defendant: (i) was present for the hearing; (ii) stated that he did not want time to obtain an attorney; (iii) received an explanation of the nature of the proceedings, a copy of the NTAs, and the judgment of conviction; and (iv) was sworn under oath. During the hearing, Defendant admitted the allegations against him. Specifically, he admitted he was not a citizen of the United States; that he was a citizen of the Dominican Republic; and that he was convicted of conspiring to distribute cocaine and heroin in federal court in 2002. Defendant also introduced a letter indicating that he cooperated with the Government during his federal drug case. The Immigration Court ordered Defendant removed from the United States. The Immigration Judge advised Defendant that he could file an application for asylum, but advised him that the Court could not advise him of the likelihood of gaining asylum. Defendant made clear he did not want to apply for asylum if it meant he would

4

remain incarcerated; he also said that he did not want to appeal the decision. Defendant sought bail, which was denied.

The Immigration Judge's April 11, 2005 removal order states that Defendant was ordered removed from the United States and that he waived his right to appeal. On May 3, 2005, Defendant filled out a notice of appeal, but there is no indication that the notice of appeal was ever received by the Immigration Court.

Thereafter, Defendant returned to the United States in December 2018, he was arrested by the New York City Police Department and charged with aggravated harassment and assault. On November 19, 2018, he was charged with illegal reentry. On March 11, 2020, he was indicted on one count of illegal reentry, in violation of Title 8, United States Code, §§ 1326(a) and (b)(2).

On March 5, 2021, Defendant filed a motion to dismiss the Indictment, alleging that: (i) his immigration proceeding was void because the Immigration Court lacked jurisdiction because the January NTA did not include a date or time for his hearing; (ii) the requirements of 8 U.S.C. § 1326(d) do not apply to him because, in his view, there is no removal order to collaterally attack; and (iii) even if Defendant were required to satisfy the requirements of § 1326(d), he has done so. For the reasons set forth below, Defendant's Motion is denied.

As stated above, Defendant's Motion is foreclosed by the Second Circuit's decision in *Bangas Gomez v. Barr*, 922 F.3d 101, 112 (2d Cir. 2019), which held that an alleged defect in an NTA can be cured if the information not included in the NTA is later provided to the alien. Because Defendant received an additional notice - the April NTA - and because the April NTA specifically informed Defendant of the date and time of the immigration hearing that he attended, any defect in the January NTA was cured before the hearing. His motion also fails because he

has not satisfied the factors required to collaterally attack his removal order under 8 U.S.C. § 1326(d).

The Second Circuit has held that "[t]he dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental right." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001). Under certain limited circumstances, § 1326(d) allows a defendant to collaterally attack any deportation upon which his illegal reentry charge is based.

Specifically, § 1326(d) permits a defendant to collaterally attack a prior deportation order if the defendant carries his burden to establishing that:

(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order;

(2) The deportation proceedings at which the order was issued improperly deprived the [defendant] of the opportunity for judicial review; *and*

(3) The entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d) (emphasis added). The Second Circuit has explained, "[t]he requirements are conjunctive, and thus [a defendant] must establish all three in order to succeed in his challenge.

Even if Defendant were able to establish that there was some defect in his removal proceeding, he would be required to satisfy the requirements of § 1326(d). Defendant does not contend that he has satisfied these requirements. Instead, he claims that: (i) because the January NTA was defective, there "simply is no removal order to collaterally attack"; and (ii) to the extent that he is required to satisfy the § 1326(d) requirements, he has done so because he was subject to a proceeding that took place absent proper jurisdiction.

6

Defendant does not contend that he exhausted his administrative remedies after his removal proceeding. Instead, he argues that "[t]here are no administrative remedies to exhaust (pursuant to § 1326(d)(1)) where the agency lacks jurisdiction altogether." (Mot. at 17.)

Even if Defendant could show that he exhausted his administrative remedies and was deprived an opportunity for judicial review, or that he is excused from those two statutory requirements under § 1326(d), he cannot demonstrate, as he must, that his removal proceeding was fundamentally unfair. To show that the entry of the removal order was "fundamentally unfair," a defendant must demonstrate "both a fundamental procedural error and prejudice resulting from the error." *Lopez*, 445 F.3d at 100 (internal quotation marks omitted). Prejudice requires a defendant to show that "absent the procedural errors, he would not have been removed." *Fernandez-Antonia*, 278 F.3d at 159; *see also United States v. Fares*, 978 F.2d 52, 57 (2d Cir. 1992) (holding that if "a fully informed exercise of the right of direct appeal would have yielded the alien no relief from deportation, the deportation order may be used to establish conclusively an element of a criminal offense"); *accord, United States v. Copeland*, 376 F.3d 61, 73 (2d Cir. 2004) ("Prejudice is shown where 'defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have occurred.'"). The words "may well have resulted" have been interpreted by the Second Circuit to require a "reasonable probability that, but for [the] . . . errors, the result of the proceeding would have been different." *United States v. Espinoza*, 442 F.Supp. 3d 596, 603 (S.D.N.Y. 2020) (quoting *Copeland* 376 F.3d at 73 (internal quotation marks omitted)). "A reasonable probability has been . . . quantified as a twenty percent probability that relief would have been granted absent the error." *United States v. Brown*, 354 F.Supp. 3d 362, 371 (S.D.N.Y 2018) (citing *United States v. Copeland*, 369 F. Supp. 2d 275, 288 (E.D.N.Y 2005)).

Even if the lack of a date and time on the January NTA were a procedural error, Defendant has not articulated any basis to believe that the removal order would not have been issued absent the alleged error. At his immigration proceeding, after appearing in person and being advised of his rights and the nature of the proceeding, Defendant admitted all of the allegations against him. Given these facts, Defendant cannot demonstrate prejudice -- he cannot show a "reasonable probability" that he would not have been ordered removed absent any procedural error. He has therefore failed to meet his burden to show that his removal order was fundamentally unfair.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion to dismiss the Indictment.

SO ORDERED.

Dated:   New York, New York
         June 8, 2021

/s/ Kimba M. Wood
_____
THE HON. KIMBA M. WOOD
United States District Judge